# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FRANK GOLDSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 C 2008 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| SOFITEL CHICAGO WATER TOWER et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

### I. BACKGROUND

Plaintiff Frank Goldstein brought this negligence action in Illinois state court against Sofitel Chicago Water Tower and related entities (collectively, "Sofitel"). Sofitel removed the case to this court based on diversity of citizenship.

Goldstein attended a wedding at the Sofitel Water Tower Hotel in Chicago in May 2005. During the reception, Goldstein leaned against the doors to a storage closet in the ballroom. The closet doors were designed to create a seamless appearance with the paneled walls of the ballroom, and Goldstein did not notice the difference. The doors opened, and Goldstein fell into the closet causing injury to his knee.

A four day bench trial was held before the court in March 2010. On July 2, 2010, the court heard closing arguments in this case. At that time, the court made a ruling from the bench on the issue of liability, setting out its findings of fact. The court held that Sofitel had been negligent, and that Goldstein's knee injury was caused by Sofitel's negligence. The court ordered the parties to brief the issue of damages by identifying what types of damages are available and pointing to the record evidence supporting any specific requests.

## II. ANALYSIS

Federal Rule of Civil Procedure 52(a) requires the court, unlike a jury, to set out its reasons for any award of damages. In this case, plaintiff requests total damages of $3.325 million, including economic damages of $200,184.02.

Goldstein provides the court with his medical bills for the treatment of his knee injury, including two separate knee surgeries. Goldstein's treating physician, Dr. Vincent DiStefano, testified by deposition that, in January 2006, he performed arthroscopic surgery. (DiStefano Dep. at 43-44.) Ultimately, the first surgery was unsuccessful in reducing Goldstein's pain and disability, so Dr. DiStefano recommended a knee replacement. (*Id.* at 55-59.) That surgery was performed in October 2007. (Trial Tr. at 572.) A short period of time at a rehabilitation facility was required following this second surgery. (DiStefano Dep. at 66-67.) As the court previously noted in its oral ruling, the court found Dr. DiStefano's testimony credible. The knee surgeries were necessary because of the injury sustained at defendants' hotel. In total, Goldstein's past medical expenses equal $106,930.77, and the court awards that amount.

Goldstein also asks for $85,253.25 in future medical expenses. This amount is equal to the cost Goldstein incurred for the knee replacement. Dr. DiStefano testified that, if Goldstein lives long enough, he would require a second knee replacement surgery, most likely after fifteen years. (DiStefano Dep. at 91-92.) At the time of trial, Goldstein was 61 years old. (Trial Tr. at 595.) During the trial, the court took judicial notice of the average life expectancy of a white male age 60 to 61 which is 20.9 years and the life expectancy of a white male age 61 to 62 years which is 20.1 years. (Trial Tr. at 648-49.)[1]

---

[1] After closing arguments, the defendants filed a motion for the court to take judicial notice of the fact that obesity—Goldstein weighed around 300 pounds at the time of the wedding (Trial Tr. at 596-98)—will reduce the average person's life expectancy. (Doc. 145.) Defendants attached 134 pages of medical articles to their motion. Although the court recognizes that it may be generally true that obesity reduces life expectancy, the court is unable

2

Goldstein is entitled to "the present cash value of the reasonable expenses of medical care, treatment and services reasonably certain to be received in the future." Ill. Pattern Jury Instructions-Civil 30.06. Given Dr. DiStefano's testimony, the average life expectancies noticed by the court, and the lack of contradictory evidence, the court finds that Goldstein is reasonably certain to need a second knee replacement sometime in the future. Sofitel does not dispute Goldstein's calculation of $85,253.25 as the proper amount of damages, and the court will award that amount in future medical costs.

Goldstein seeks $8,000 in lost earnings incurred while he was undergoing rehabilitation in the weeks following his knee replacement. This figure comes from Goldstein's testimony that he was unable to complete work for some of his clients during this period. (Trial Tr. at 584-85.) Goldstein works as a photographer. Sofitel notes that Goldstein did not provide corroboration for his testimony but otherwise is unable to contest the figure. The court finds Goldstein's testimony credible and awards $8,000 in lost earnings.

In *Arpin v. United States*, 521 F.3d 769 (7th Cir. 2008), the Seventh Circuit discussed the proper procedure for awarding noneconomic damages. Because Rule 52 requires the court to connect the evidence to the amount of an award and because noneconomic damages are difficult to quantify, the court should look to "awards in similar cases, both in Illinois and elsewhere." *Id.* at 776; *accord Maldonado v. Sinai Medical Group, Inc.*, --- F. Supp. 2d ---, 2010 WL 1416187 (N.D. Ill. Apr. 2, 2010). The *Arpin* court also suggested that one way to perform this analysis would be, first, to calculate noneconomic damages by looking at the average ratio between economic and noneconomic damages in similar cases and second, to consider any special factors

---

to determine how this fact affects the calculation of damages in this case. The court will not attempt, unguided, to read and comprehend the medical literature provided by Sofitel. Sofitel had an opportunity at trial to present expert testimony, and the court will not guess at how Goldstein's weight would be expected to impact his life expectancy or health. Accordingly, the court denies Sofitel's motion.

that might warrant a departure from the average. 521 F.3d at 777 (discussing a potential method for calculating damages for loss of consortium). As other district courts have recognized, the Seventh Circuit suggested the ratio approach but did not require courts to follow this analysis. *Maldonado*, 2010 WL 1416187.

The evidence in this case demonstrated that Goldstein was in considerable pain following the accident and continuing until his knee replacement surgery. Even following the surgery, Goldstein continues to experience some amount of pain. Goldstein testified that he and his wife led an active lifestyle prior to the accident. They took vacations together where they biked and hiked. In the months before the knee replacement, Goldstein's activities were very limited. After the surgery, Goldstein continues to have some limitations. He relies on his wife to do many of the chores around the house. He cannot walk or bike long distances or do other activities that put significant stress on his knee. However, Goldstein testified that he still bikes, walks, and engages in other activities, just not to the extent that he used to.

The parties have identified a number of similar cases. The most relevant cases cited by Goldstein include the following:

- In *Carroll v. A&G Electrical Co.*, 812 N.E.2d 431 (Ill. App. Ct. 2004), the Appellate Court of Illinois upheld a jury award of $3,169,008 for a 56 year-old, 300-pound male plaintiff who injured his left leg and knee when a piece of heavy equipment fell on him. The plaintiff required a knee replacement and suffered problems with the veins in his leg that required him to wear a compression hose to keep swelling under control. The jury awarded $923,706 in economic damages and $2,244,500 in noneconomic damages. The ratio of noneconomic to economic damages was 2.43.

- In *Burns v. Taylor Ave. Properties*, Case No. 14958/05 (Bronx, N.Y. Sup. Ct. Mar. 15, 2010), a 46 year-old male plaintiff slipped in the hallway of his apartment building. Burns had two failed arthroscopic surgeries and a knee replacement. The jury awarded economic damages of $300,000 and $3.2 million in noneconomic damages. The ratio of noneconomic to economic damages was 10.6.

- In *Pirazzoli v. Carolina Freight Carriers et al.*, Case No. 95 L 2924 (Cook Co., Ill. Aug. 22, 2000), a 34 year-old male construction laborer suffered an injury when a load of steel

equipment crushed his legs. The plaintiff required 11 surgeries and was unable to return to construction work. The jury awarded $1,020,893 in economic damages and $2.275 in noneconomic damages. The ratio of noneconomic to economic damages was 2.23.

- In *Partridge v. Dohrn Transfer Co.*, Case No. 99L-357 (17th Jud. Cir., Ill. Oct. 15, 2003), a 53 year-old male dock worker fell from a truck, necessitating knee replacements in both knees. The jury awarded $561,114 in economic damages and $2,000,500 in noneconomic damages. The ratio of noneconomic to economic damages was 3.57.

- In *Archer v. Home Depot USA Inc.*, Case No. 98L-10390 (Law Div., Ill. June 4, 2002), a 52 year-old female slipped on a puddle in a Home Depot store. She sustained multiple injuries and required a knee replacement. She also had multiple surgeries for post-operative infections and other pre-existing conditions. The jury awarded economic damages of $347,311 and noneconomic damages of $1.903 million. The ratio of noneconomic to economic damages was 5.48.

The most relevant cases cited by Sofitel include:

- In *Mack v. Wiley*, 991 So.2d 479 (La. Ct. App. May 2, 2008), a 71 year-old man aggravated a pre-existing arthritic condition in a car accident, eventually requiring a knee replacement. The jury calculated the plaintiff's damages as $39,500 for economic damages and $15,000 in noneconomic damages. The appellate court examined past jury awards in similar cases and concluded that the jury's noneconomic damage award was unreasonable. The court noted that, in similar cases where plaintiffs required knee replacements, noneconomic damages ranged from $65,000 to $125,000. After adjustments made by the appellate court, economic damages were $45,174.15 and noneconomic damages were $65,000. The ratio after appeal was thus 1.44.

- In *Van Ness v. New York City Transit Authority*, 734 N.Y.S.2d 73 (N.Y. App. Div. 2001), a 30 year-old female slipped and fell in a subway station. The evidence showed that the plaintiff underwent surgery and would eventually have to receive a knee replacement. The jury assessed damages at $702,000 in economic damages and $1.7 million in noneconomic damages. The appellate court found some of the damages to be excessive and reduced economic damages to $552,000 and noneconomic damages to $600,000. The ratio after appeal was thus 1.09.

- In *Castellano v. City of New York*, 584 N.Y.S.2d 114 (N.Y. App. Div. 1992), the plaintiff police officer injured his knee when he fell on an icy sidewalk. According to his doctor, the plaintiff underwent two arthroscopic procedures and would likely require further surgery to remove his kneecap. He was unable to continue work as a police officer. The jury assessed damages at $540,000 in economic damages and $500,000 in noneconomic damages. On appeal, the jury's award of noneconomic damages was found to be excessive, and the court ordered a new trial on those damages unless the plaintiff consented to reducing the amount to $200,000. The ratio after appeal would thus be .37.

The noneconomic damage awards in these cases range between $65,000 and $3.2 million. Goldstein's injury did not cause the severe disability or pain that it appears some of these plaintiffs experienced. On the other hand, the court accepts Goldstein's testimony that he was in pain and significantly disabled prior to his surgery, and that his disability and pain continue in less severe form today. In this case, an award on the high-end of the range does not seem appropriate given the fact that Goldstein's surgery restored a significant part of his mobility.

If the court applies the Seventh Circuit's ratio approach from *Arpin*, the average ratio of noneconomic to economic damages would be 3.4. If the total economic damages in this case equal $200,184.02, the ratio approach yields $680,625.67 in noneconomic damages. Goldstein's pain and suffering do not appear to be significantly more or less severe than average. However, there are two reasons why an award in this range would under-compensate Goldstein. First, because Goldstein works as a self-employed photographer, the amount of economic damages understates the effect of this injury on his earnings. He is not precluded from working, but his disability will limit the kinds of work he can do in the future. Thus, use of the pure ratio method would result in a lower figure for noneconomic damages because the court starts with a lower figure for economic damages.

Second, the court was convinced that, prior to his injury, Goldstein's greatest source of enjoyment, and the source of much of his self-esteem, was his unusual degree of and delight in physical activity–unusual given his age and unusual given his weight. Goldstein relished his bicycle-riding, a hobby which he shared with his wife. His enjoyment of his job rested in large part on his enjoyment of its physical demands; his current physical limitations are limitations on his ability to do his job as he did it before and enjoy it as much. Socially, Goldstein loved to be the center of any party to which he was invited, something possible only because he was so

socially and physically outgoing. A disabling, limiting knee injury for such an individual represents an enormous psychological and physical adjustment. Deprived of his ability to enjoy and engage in the extensive physical activity which characterized his life before his injury, Goldstein is in his early sixties with a weight problem and a limited level of physical activity. Whereas before the injury neither his age nor his weight appeared to affect his high level of physical activity, that is no longer true. Thus, who he is, what he does and what he can enjoy has all been negatively affected by his injury.

Recognizing these factors, the court awards Goldstein $1.3 million in noneconomic damages, including for past and future pain and suffering and for past and future disability. This amount is less than awards in cases cited by Goldstein, but many of these cases appear to involve more severe injuries. This amount is significantly greater than the awards cited by Sofitel, but the court believes that an award in that lower range would under-compensate Goldstein for the reasons stated above.

### III. CONCLUSION

Accordingly, Sofitel's motion to take judicial notice is denied, and the court awards Goldstein total damages of $1,500,184.02.

ENTER:

                                   ___/s/_____
                                   JOAN B. GOTTSCHALL
                                   United States District Judge

DATED: September 27, 2010